BRADLEY/GROMBACHER LLP
Kiley L. Grombacher (SBN 245960)
kgrombacher@bradleygrombacher.com
Plaintiff Hector Gustav Gutierrez
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: 805-270-7100
Fax: 805-270-7589

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

HECTOR GUSTAV GUTIERREZ                )
                                       )
Plaintiff,                             )
                                       )
vs.                                    )
                                       )
Defendant "1" a/k/a "Yan Shi Zhang" and )
John Doe Defendants 1-15 who are the cohorts )
of Defendant "1" and are the owners of the )
following cryptocurrency deposit wallets where )
Plaintiff's stolen cryptocurrency assets were )
transferred:                           )
Binance:                               )
1DapM8cHxTE35z9AyXXkhRVXtMucJyvWia,    )
1DDWbqzoejJKcR5cAErPJXo6qur19EdLm8,    )
17A5UKMuPL3obTpCuMWXPsRp2uFBcBXtkc,   )
17hE2Tj8CgcNyagaXijqhJPdb5J36AaQjY,    )
17mEq1YoHcpay6QfbwtD9A8FwwZSurPgqZ,    )
1LzN8oCuyw76EvrVV3PbE87YGczUzc68Lm,    )
1LxktcfvQNMsPirzXqFisHK8MA8WhFNp5m,    )
14oAdLU6i9keMAFkCZcvhhxVA9aCLM83Jc,    )
152SHiNJu9F3KvomaX4GtcffNHjqgnNfoF,    )
17Dk4kwTdpnbc9tAHuj8MMKraJFpbsQnVK,    )
and, 1KPJfuxFii5PjMRZy94TEBrhGpqtjWmCG1 )
Mexc.com:                              )
3DDQ5pgZxm3z5oNRSBLwZDp34MLXWtGK89 )
Fixedfloat:                            )
bc1q0xd0yelx2qs2mnanwckxdcu8jvxse9yk44qnn4 )

1

and                                                             )
bc1q7g7hnucl8lf8yzxgpz33kup0vmanad6csursxr                      )
Kraken:                                                         )
3EVGtJMsUQveT5bZDkdh5THZqwLrpuKGq9                              )
                                                                )
Defendant(s).                                                   )

## COMPLAINT FOR
## VIOLATION OF THE RACKETEER INFLUENCED
## AND CORRUPT ORGANIZATIONS ACT

Plaintiff, Hector Gustav Gutierrez, by and through undersigned counsel, sues Defendant "1" a/k/a "Yan Shi Zhang" and John Doe Defendants 1-15, as follows:

### PRELIMINARY STATEMENT

1.      Defendants stole cryptocurrency from Plaintiff in the amount of 33.80204 Bitcoin (BTC) pursuant to a sophisticated global internet cryptocurrency fraud and conversion scheme, the current market value of which is two million one hundred fifty-two thousand nine hundred five dollars and sixty-seven cents ($2,152,905.67)[1].

2.      Defendant "1" played a material role in the theft of Plaintiff's assets, and he and his cohorts currently possess all or a significant portion of Plaintiff's stolen property.

3.      Plaintiff brings this lawsuit to recover his stolen assets.

### SUBJECT MATTER JURISDICTION AND VENUE

4.      This is an action for damages related to the theft of Plaintiff's

---

[1] Current market value calculated using data from blockchain.com on August 23, 2024.

cryptocurrency assets as detailed below. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). This action includes damages pursuant to 18 U.S.C. § 1964 (the "Racketeer Influenced and Corrupt Organizations Act" or "RICO"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

5.    Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c).6.

6.    Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of California and this district through at least a fraudulent website (www.coinberryf.com) which can be accessed on the internet and on smartphones and are accessible from California.

7.    Plaintiff accessed the fraudulent website (www.coinberryf.com) in the State of California and the theft occurred while Plaintiff was located in the State of California. Defendants directed numerous false and fraudulent representations to Plaintiff in this district, stole Plaintiff's assets within this district, and caused significant harm to Plaintiff in this district.

8.    Moreover, every website has at least one associated IP address that it uses to communicate with devices on a network. At the time of tracing, the IP addresses for www.coinberryf.com were 104.21.74.26 and 172.67.153.112 both of

which were tracked to San Francisco, California. At the time of filing, Plaintiff tracked the following IP addresses for www.coinberryf.com to Hong Kong: 27.124.41.156, 14.128.34.154, 14.128.34.153, and 27.124.41.170. At the time of filing, Plaintiff tracked the following IP addresses for www.coinberryf.com to Phnom Penh, Cambodia: 27.124.34.228, 27.124.34.224.

## **THE PARTIES AND PERSONAL JURISDICTION**

9. Plaintiff, an individual, is *sui juris*, and is a resident and citizen of California.

10. Defendant "1" is an individual, is *sui juris*, and is subject to the personal jurisdiction of this Court. Defendant "1" represented to Plaintiff that his name was "Yan Shi Zhang." Defendant represented to Plaintiff that he was originally from Singapore but was currently living in New York City. The parties' communications consistently demonstrated Defendant "1" was from Singapore and a Citizen of New York.

11. John Doe Defendants 1-15 are the cohorts of Defendant "1" and are the owners of the following cryptocurrency deposit wallets where Plaintiff's stolen cryptocurrency assets were transferred:

- Binance:
  - 1DapM8cHxTE35z9AyXXkhRVXtMucJyvWia
  - 1DDWbqzoejJKcR5cAErPJXo6qur19EdLm8
  - 17A5UKMuPL3obTpCuMWXPsRp2uFBcBXtkc

- o 17hE2Tj8CgcNyagaXijqhJPdb5J36AaQjY
- o 17mEq1YoHcpay6QfbwtD9A8FwwZSurPgqZ
- o 1LzN8oCuyw76EvrVV3PbE87YGczUzc68Lm
- o 1LxktcfvQNMsPirzXqFisHK8MA8WhFNp5m
- o 14oAdLU6i9keMAFkCZcvhhxVA9aCLM83Jc
- o 152SHiNJu9F3KvomaX4GtcffNHjqgnNfoF
- o 17Dk4kwTdpnbc9tAHuj8MMKraJFpbsQnVK
- o 1KPJfuxFii5PjMRZy94TEBrhGpqtjWmCG1
- Mexc.com:
  - o 3DDQ5pgZxm3z5oNRSBLwZDp34MLXWtGK89
- Fixedfloat:
  - o bc1q0xd0yelx2qs2mnanwckxdcu8jvxse9yk44qnn4
  - o bc1q7g7hnucl8lf8yzxgpz33kup0vmanad6csursxr
- Kraken:
  - o 3EVGtJMsUQveT5bZDkdh5THZqwLrpuKGq9

12.    John Doe Defendants 1-15 are *sui juris* and subject to the personal jurisdiction of this Court. John Doe Defendants 1-15 have not only intentionally concealed their identity as part of their scheme to defraud Plaintiff, but as part of their conspiracy, have also directed fraudulent communications towards Plaintiff in California, causing Plaintiff to suffer significant economic and emotional harm while in California.

13.    At all times material hereto, Defendants have maintained and continue to maintain private cryptocurrency wallets and cryptocurrency exchange accounts in which all of or a portion of Plaintiff's stolen cryptocurrency currently sits.

## **ALLEGATIONS COMMON TO ALL COUNTS**

**A. Defendants Execute an International Cryptocurrency Theft Scheme**

14.    Plaintiff is a victim of not only a nationwide but also a worldwide RICO conspiracy known as "pig butchering."

15.    Pig butchering scams are "fraudulent crypto investment schemes directed from Asia," which are now a billion-dollar industry.[2]

16.    Pig butchering scams run and perpetrated by organized criminal groups in Southeast Asia, are called such because the victims are "likened to hogs fattened up for slaughter."[3]

17.    The scammers, typically located in Southeast Asia, carefully research their victims, and can spend months grooming the victim to gain their trust.

18.    Pig butchering scammers utilize expertly crafted copycat websites that replicate authentic trading platforms. These scammers simulate trades and returns and the victims are unaware of the scheme.[4]

19.    The perpetrators of these so-called pig butchering scams befriend victims and over time build up trust. Once that trust is gained, the perpetrators claim to be experts in cryptocurrency investments, fraudulently represent themselves to be

---

[2] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/
[3] https://www.nbcnews.com/news/crime-courts/pig-butchering-scams-rise-fbi-moves-stop-bleeding-rcna137009
[4] https://www.reuters.com/investigates/special-report/fintech-crypto-fraud-thailand/

experts in cryptocurrency investing, and convince victims to send their digital assets to fake copycat exchanges.

20.    On or about September 14, 2023, Plaintiff was introduced to Defendant "1" by an individual Plaintiff had met on LinkedIn claiming to be Defendant "1"'s niece. Plaintiff first spoke with Defendant "1" via video phone call (725-485-9630), but all communication thereafter was via Telegram (725-485-8630 VoIP).

21.    Defendant "1" misrepresented that he would teach Plaintiff how to become a successful cryptocurrency trader.

22.    Defendant "1" lured Plaintiff by representing himself to be a cryptocurrency investment broker with a team of thirty (30) people affiliated with Binance, a legitimate cryptocurrency platform. Additionally, Defendant "1" showed Plaintiff examples over Telegram of how he was successfully earning high returns on his cryptocurrency trading methods.

23.    Defendant "1" directed Plaintiff to sign up for Kraken, purchase Bitcoin (BTC), and transfer Bitcoin (BTC) from Kraken to a trusted exchange called Coinberry (www.coinberryf.com) where the Bitcoin (BTC) was then converted to Tether (USDT) for use in various investment strategies. However, the trusted exchange that Defendant "1" directed Plaintiff to transfer his Bitcoin to was not a legitimate platform but was instead a fraudulent website created to deceive individuals, including Plaintiff, into believing they were investing on a legitimate

cryptocurrency exchange.

24. To further entice Plaintiff into believing he was a legitimate investor who only wanted to assist Plaintiff in becoming a successful cryptocurrency trader like himself, on or about November 30, 2023, Defendant "1" had Plaintiff run a test where he transferred approximately five thousand dollars ($5,000.00) worth of cryptocurrency from his Coinberry account to Kraken. When the transfer was successful, Plaintiff believed that Defendant "1" was a legitimate investor who wanted to help him learn how to invest cryptocurrency and further, that the fraudulent website he had used was also legitimate.

25. After familiarizing himself with the process of trading on the fraudulent website recommended by Defendant "1," and in reliance on the foregoing false and fraudulent misrepresentations, Plaintiff started to transfer cryptocurrency from his Kraken account, legitimate third-party online platforms for buying, selling, transferring, and storing cryptocurrency, to the fraudulent platform (www.coinberryf.com).

26. Defendants posted fraudulent returns on their fake website which made it appear that Plaintiff was making money on his trades. As a result, he continued to transfer cryptocurrency from his Kraken account to the fraudulent exchange.

27. Because of the fraudulent representations contained on the fake website, and misrepresentations made by Defendant "1", Plaintiff believed that he had made

significant money from his previous investments.

28.    By December 2023, Plaintiff believed he had made a considerable amount of money. In fact, Plaintiff was told by Defendant "1" that the value of his cryptocurrency had grown from approximately one million seventy-five thousand nine hundred twenty-three dollars ($1,075,923.00) to approximately six million five hundred thousand ($6,500,000.00), which was also reflected on the fraudulent website.

29.    On or about December 5, 2023, Plaintiff entered into a large delivery contract that was initially set for seven (7) days. Defendant "1" indicated that because values were fluctuating more than usual, Plaintiff had to put in an additional five hundred thousand dollars ($500,000.00) worth of cryptocurrency to cover his position and extend the contract via Coinberry to a total of fifteen (15) days. Defendant "1" warned Plaintiff that if he did not follow his instructions, Plaintiff would lose one hundred percent of his investment. Plaintiff borrowed money and liquidated his remaining IRAs to cover his position, and the contract appeared to close successfully.

30.    Plaintiff then began the process of withdrawing his funds from Coinberry but was informed that his account had been restricted and that he would need to make an additional deposit of ten percent of his total balance to verify his account.

31.    It was at this point that Plaintiff became suspicious and stopped transferring any more funds to www.coinberryf.com. In addition, Plaintiff reached out to Bitbuy, a legitimate exchange that had recently acquired Coinberry platform, to inquire if www.coinberryf.com was operated by them. Bitbuy confirmed that www.coinberryf.com was an imposter and fake exchange.

32.    After multiple unsuccessful attempts to withdraw his funds, Plaintiff realized he had been scammed.

**B. Plaintiff's Forensic Tracing of Their Stolen Cryptocurrency**

33.    When a transaction is made on the blockchain it is assigned a "transaction hash" ("TXID"). A transaction hash is a unique string of characters that is given to every transaction that is verified and added to the blockchain. A TXID is used to uniquely identify a particular transaction. All on-chain transactions (the transactions from or to external addresses) have a unique TXID that can be seen in transaction details. All on-chain transactions (depositing and withdrawing of funds) have a unique TXID that can be found in transaction details.

34.    Within the time frame of September 5th, 2023, and December 31st, 2023, Plaintiff made 16 transactions from his Kraken account to the fraudulent exchange. In total, Plaintiff transferred approximately 33.80204 Bitcoin (BTC) to the fraudulent exchange, which has a current market value of approximately two million one hundred fifty-two thousand nine hundred five dollars and sixty-seven cents

($2,152,905.67).

35.    Plaintiff has retained forensic cryptocurrency tracing experts who have traced Plaintiff's stolen assets on the blockchain.  Attached hereto as Exhibit A is the tracing report completed by experts at CNC Intelligence Inc. Plaintiff incorporates Exhibit A into his verified complaint.

36.    As the tracing report shows, Defendant "1" with help of multiple co-conspirators opened numerous cryptocurrency wallets owned by John Doe Defendants 1-15 to launder the stolen cryptocurrency to the identified foreign cryptocurrency exchanges.

**COUNT I**
**RACKETERING IN VIOLATION OF 18 U.S.C. § 1964**

37.    The operation of Defendant "1" and John Doe Defendants 1-15, individually and through their alleged business in trading cryptocurrency as cryptocurrency traders in their sophisticated global internet cryptocurrency fraud and conversion scheme constitutes a racketeering operation.

38.    Defendant "1" directed and coordinated with John Doe Defendants 1-15 as yet unidentified additional parties ("RICO Enterprise," or "Enterprise") within the meaning of 18 U.S.C. § 1964(4), which Enterprise was engaged in, or the affairs of which affected, interstate and foreign commerce.

39.    Defendant "1" and John Doe Defendants 1-15 were each also a member of the RICO Enterprise, as each was a distinct person, separate and apart, from each

of the RICO Enterprise members together.

40.    The RICO Enterprise engaged in a pattern of racketeering activity.

41.    Each person's participation was effective partly because each mimicked an actual on-going business (including the fraudulent platform www.coinberryf.com) with a presence in the marketplace: the United States and indeed worldwide.

42.    As co-conspirators, the unlawful conduct of each member of the RICO Enterprise is attributed to every member, i.e. Defendant "1" and John Doe Defendants 1-15 as yet unidentified co-conspirators.

43.    As set forth above, the RICO Enterprise engaged in the following predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1): Wire fraud in violation of 18 U.S.C. § 1343.

44.    The predicate acts set forth in this Complaint, include defrauding Plaintiff beginning in September 2023, through domestic and international telephone communication including LinkedIn and Telegram messaging, video calls, domestic and international in-app communication, and e-mails with Plaintiff.

45.    The predicate acts set forth in this Complaint are related, in that they have the same or similar purposes, results, participants, and methods of commission, and are otherwise interrelated by distinguishing characteristics and are not isolated events. The related criminal schemes set forth in this Complaint constitutes a

"pattern or patterns of racketeering activity" as defined in 18 U.S.C. § 1961(5).

46.    The Defendants engaged in two or more predicated acts of racketeering within a period of ten years and committed at least one such act after October 15, 1970.

47.    The information that would establish further predicate acts and further acts of racketeering is solely within the control of Defendants. Plaintiff requires discovery to ferret out the further extent of predicate acts and further acts of racketeering, including the identity of similarly situated defrauded victims and the scope of the systematic fraud.

48.    Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in acquisition of an interest in, or in the establishment or operation of, the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(a).

49.    Defendants through a pattern of racketeering activity maintain, directly or indirectly, an interest in or control of the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(b).

50.    Defendant "1" was associated with the RICO Enterprise, and conducted

or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described herein in violation of 18 U.S.C. § 1962(c).

51.   Defendant "1" and/or John Doe Defendants 1-15 as yet unidentified additional parties, each entered into a conspiracy to conduct or participate, directly or indirectly, in the conduct of the RICO Enterprises' affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(d).

52.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendant "1" and John Doe Defendants 1-15, jointly and severally, as follows:

        (a)     damages;

        (b)     statutory trebled damages pursuant to 18 U.S.C. § 1964(c);

        (c)     punitive damages;

        (d)     costs, including reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

        (e)     costs;

        (f)     interest; and

        (g)     such other and further relief as this Court deems just

and proper.

## COUNT II
## CONVERSION

53.     Through fraudulent misrepresentations, Defendants convinced Plaintiff to invest his money into cryptocurrency.

54.     Defendants then convinced Plaintiff to transfer his cryptocurrency to a fake exchange owned and operated by Defendants.

55.     After Plaintiff transferred his cryptocurrency assets to the fake exchange, Defendants then transferred Plaintiff's cryptocurrency to cryptocurrency addresses owned by Defendant "1" and John Doe Defendants 1-15.

56.     Plaintiff owned and had a right to possess the cryptocurrency.

57.     Defendants substantially interfered with the cryptocurrency by knowingly or intentionally misappropriating the funds and taking possession of the cryptocurrency, preventing Plaintiff from having access to the cryptocurrency.

58.     Defendants have refused to return Plaintiff's cryptocurrency after Plaintiff demanded its return on multiple occasions.

59.     Defendants did not have Plaintiff's consent to convert Plaintiff's funds to their own use or to the use of others not entitled thereto and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment.

60.     Defendant's conduct was a substantial factor in causing Plaintiff harm.

61.     As a direct and proximate result of Defendants' conversion and

conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendant "1" and John Doe Defendants 1-15, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

### COUNT III
### UNJUST ENRICHMENT

62. Defendants received a direct benefit at Plaintiff's expense by fraudulently convincing Plaintiff to transfer valuable cryptocurrency that Defendants converted from Plaintiff. Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit.

63. The circumstances under which Plaintiff conferred, and Defendants accepted render Defendants' retention of the benefits inequitable.

64. Equity required that Defendants return to Plaintiff the benefits he conferred upon Defendants.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendant "1" and John Doe Defendants 1-15, jointly and severally, for damages, interest, costs, and such other further relief as this Court deems just and proper.

### COUNT IV
### IMPOSITION OF CONSTRUCTIVE TRUST AND
### DISGORGEMENT OF FUNDS

65. This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendants.

15

66.   This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

67.   As set forth above, Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

68.   The cryptocurrency assets at issue are specific identifiable property and have been traced to Binance, Mexc.com, Fixedfloat, and Kraken.

69.   Any and all assets being held by Defendants at Binance, Mexc.com, Fixedfloat, and Kraken must be held in trust for Plaintiff's benefit, and Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

70.   The digital assets identified herein which are being held by Defendants at Binance, Mexc.com, Fixedfloat, and Kraken must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

**WHEREFORE**, Plaintiff demands the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of Defendant "1" and/or John Doe Defendants 1-15, in the identified cryptocurrency wallet addresses held at Binance, Mexc.com, Fixedfloat, and Kraken and further

demands that the wrongfully obtained property be returned to Plaintiff.

**COUNT V**
**CONSPIRACY**

71.    The Defendants conspired and confederated with each other to commit, and committed, Conversion (Count II); and Unjust Enrichment (Count III).

72.    Plaintiff was harmed by Defendant's wrongful acts of conversion, RICO violations, and unjust enrichment. Relying on the false statements made by Defendant "1", including that he was an expert in cryptocurrency investments, Plaintiff transferred his cryptocurrency assets to fake cryptocurrency platforms which were in actuality deposit addresses owned by John Doe Defendants 1-15.

73.    Defendants conspired with others via the fraudulent website www.coinberryf.com and Telegram where they communicated with Plaintiff. Defendant "1" and John Doe Defendants 1-15 are the owners of the cryptocurrency deposit addresses where Plaintiff's stolen cryptocurrency was transferred.

74.    As a result, Plaintiff has suffered damages as a direct and proximate result of Defendants' conspiracy.

75.    Defendants are responsible for the harm caused by such wrongful acts because they each were part of a conspiracy to commit such violations.

76.    Defendants each entered into an agreement to commit such wrongful acts.

77.    Defendants were aware that each co-conspirator planned to commit

such wrongful acts.

78.    Defendants each agree with one another and intended that the wrongful acts be committed.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendant "1" and John Doe Defendants 1-15, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

## **<u>VERIFICATION</u>**

I, HECTOR GUSTAV GUTIERREZ, hereby declare under penalty of perjury that I have read the foregoing COMPLAINT FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT and verify that all statements herein are true and correct to the best of my knowledge, understanding, and belief.

Dated: September __4__, 2024

HECTOR GUSTAV GUTIERREZ, Plaintiff

Dated: September 4, 2024          Respectfully Submitted,

/s/ Kiley L. Grombacher
Kiley L. Grombacher, Esq. (SBN 245960)
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: 805-270-7100
Facsimile:  805-270-7589
E-Mail:
kgrombacher@bradleygrombacher.com

19