KILEY L. GROMBACHER
BRADLEY GROMBACKER, LLP
31365 OAK CREST DRIVE, SUITE 240
WESTLAKE VILLAGE CA 91361
KROMBACHER@BRADLEYGROMBACHER.COM
TELEPHONE:805-270-7100
FACSIMILE: 805-270-7589

DANIEL J. THORNBURGH (*PRO HAC VICE*)
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
DTHORNBURGH@AWKOLAW.COM
TELEPHONE: 850-202-1010
FAX: 850-916-7449

*Counsel for Plaintiff, Hector Gustav Gutierrez*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR GUSTAV GUTIERREZ,<br><br>Plaintiff,<br><br>v.<br><br>DEFENDANT "1" A/K/A "YAN SHI ZHANG", AND JOHN DOE DEFENDANTS 1-12 WHO ARE COHORTS OF DEFENDANT "1" AND ARE THE OWNERS OF THE FOLLOWING CRYPTOCURRENCY DEPOSIT WALLETS WHERE PLAINTIFF'S STOLEN CRYPTOCURRENCY ASSETS WERE TRANSFERRED:<br><br>Binance: 1DapM8cHxTE35z9AyXXkhRVXtMucJyvWia | Case No. 5:24-cv-01923-KK-SHK<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**Date:  October 16, 2025**<br><br>**Time:  9:30 a.m.**<br><br>**Judge:  Hon. Kenly Kiya Kato**<br><br>**Courtroom:  3, 3rd Floor** |

1

, 1DDWbqzoejJKcR5cAErPJXo6qur19EdLm8, 17A5UKMuPL3obTpCuMWXPsRp2uFBcBXtkc, 17hE2Tj8CgcNyagaXijqhJPdb5J36AaQjY, 17mEq1YoHcpay6QfbwtD9A8FwwZSurPgqZ, 1LzN8oCuyw76EvrVV3PbE87YGczUzc68Lm, 1LxktcfvQNMsPirzXqFisHK8MA8WhFNp5m, 14oAdLU6i9keMAFkCZcvhhxVA9aCLM83Jc, 152SHiNJu9F3KvomaX4GtcffNHjqgnNfoF, 17Dk4kwTdpnbc9tAHuj8MMKraJFpbsQnVK, 1KPJfuxFii5PjMRZy94TEBrhGpqtjWmCG1 Mexc.com: 3DDQ5pgZxm3z5oNRSBLwZDp34MLXWtGK89

Defendants.

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, Plaintiff, Hector Gustav Gutierrez, hereby request that the Court enter a final order of default in this matter against DEFENDANT "1" a/k/a "Yan Shi Zhang" and JOHN DOES 1-12, as yet unidentified Individuals, Business Entities and/or Unincorporated Associations (collectively "Defendants") who have failed to appear or otherwise respond to the Complaint within the prescribed period of time allowed under the Federal Rules of Civil Procedure. In support thereof, and in accordance with Rule 55(a), Plaintiff states as follows:

## FACTUAL BACKGROUND

Defendants stole cryptocurrency from Plaintiff in the amount of 33.67101 Bitcoin (BTC) to a sophisticated global internet cryptocurrency fraud and conversion scheme, the current market value of which is three million nine hundred twenty-nine

2

seven hundred fifty-five dollars ($3,929.755.00). Defendant "1", a/k/a "Yan Shi Zhang", played a material role in the theft of Plaintiff's assets, and he and his cohorts currently possess all or a significant portion of Plaintiff's stolen property.

Plaintiff is a victim of not only a nationwide but also a worldwide RICO conspiracy known as "pig butchering." Pig butchering scams are "fraudulent crypto investment schemes directed from Asia," which are now a billion-dollar industry. Pig butchering scams run and perpetrated by organized criminal groups in Southeast Asia, are called such because the victims are "likened to hogs fattened up for slaughter." The scammers, typically located in Southeast Asia, carefully research their victims, and can spend months grooming the victim to gain their trust. Pig butchering scammers utilize expertly crafted copycat websites that replicate authentic trading platforms. These scammers simulate trades and returns and the victims are unaware of the scheme.

Defendant "1" directed Plaintiff to sign up for Kraken, purchase Bitcoin (BTC), and transfer his Bitcoin (BTC) from Kraken to www.coinberryf.com, which was a copycat website of the legitimate exchange Coinberry. Plaintiff's Bitcoin (BTC) was then converted to Tether (USDT) for use in various crypto investment strategies. However, the fraudulent exchange that Defendant "1" directed Plaintiff to transfer his Bitcoin to (Coinberryf) was not a legitimate platform but was instead a fraudulent website created to deceive individuals, including Plaintiff, into believing they were investing on a legitimate cryptocurrency exchange.

3

To further entice Plaintiff into believing he was a legitimate investor who only wanted to assist Plaintiff in becoming a successful cryptocurrency trader like himself, on or about November 30, 2023, Defendant "1" had Plaintiff run a test where he transferred approximately five thousand dollars ($5,000.00) worth of cryptocurrency from his Coinberry account to Kraken. When the transfer was successful, Plaintiff believed that Defendant "1" was a legitimate investor who wanted to help him learn how to invest cryptocurrency and that the fraudulent website he had used was also legitimate.

Defendants posted fraudulent returns on their fake website which made it appear that Plaintiff was making money on his trades. As a result, he continued to transfer cryptocurrency from his Kraken account to the fraudulent exchange. However, after multiple unsuccessful attempts to withdraw his funds, Plaintiff realized he had been scammed.

## PROCEDURAL BACKGROUND

On September 10, 2024, Plaintiff filed their Complaint for Racketeering in violation of 18 U.S.C. § 1964.[1]

On July 3, 2025, Defendants were served with Summons and Complaint via Telegram, Non-Fungible Tokens (NFTs) and via website posting pursuant to the Court's June 30, 2025, Order Granting Motion for Alternative Service of Process on

---

[1] ECF No. 1 [Complaint]

Foreign Defendants under Federal Rule of Civil Procedure 4(f)(3).[2][3] The time allowed for Defendants to respond to the Complaint has expired.

Neither Plaintiff nor the Court has granted Defendants an extension of time to respond to the Complaint. Defendants have also failed to appear or otherwise file a responsive pleading.

Plaintiffs are informed and believe Defendants are not infants or incompetent persons. Fed. R. Civ. P. 55(b)(2).

Plaintiffs are informed and believe that the Service members Civil Relief Act does not apply.

## ANALYSIS

**A. Final Default Judgement Should be Entered Against Defendants**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331. Personal jurisdiction over Defendants and venue in this district are proper under 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c). Among other things, Defendants transacted their affairs in this district insomuch as Defendants directed business activities toward and conduct business with consumers throughout the United States, including within the State of California and this District.

Defendants are subject to personal jurisdiction in this district, because they

---

[2] See Dkt. 26-1: Exhibit "1" [Thornburgh Declaration.] at ¶¶ 3-5; ECF No. 25 [Order Granting Alternate Service of Process on Foreign Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3)] at ¶¶ 5
[3] On September 12, 2025, Plaintiff voluntarily dismissed claims against the Kraken and FixedFloat wallet addresses.  Dkt. No. 34.

direct business activities toward and conduct business with consumers throughout the United States, including within the State of California and this district through at least a fraudulent website (www.coinberryf.com) which can be accessed on the internet and on smartphones and are accessible from California. Dkt. No. 1 at ¶ 6. Plaintiff accessed the fraudulent website (www.coinberryf.com) in the State of California and the theft occurred while Plaintiff was located in the State of California. Defendants directed numerous false and fraudulent representations to Plaintiff in this district, stole Plaintiff's assets within this district, and caused significant harm to Plaintiff in this district. Dkt. No. 1 at ¶ 7.

Moreover, every website has at least one associated IP address that it uses to communicate with devices on a network. At the time of tracing, the IP addresses for www.coinberryf.com were 104.21.74.26 and 172.67.153.112 both of which were tracked to San Francisco, California. At the time of filing, Plaintiff 1 tracked the following IP addresses for www.coinberryf.com to Hong Kong: 27.124.41.156, 14.128.34.154, 14.128.34.153, and 27.124.41.170. At the time of filing, Plaintiff tracked the following IP addresses for www.coinberryf.com to Phnom Penh, Cambodia: 27.124.34.228, 27.124.34.224. Dkt. No. 1 at ¶ 8. Defendants are further subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (1) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (2) exercising jurisdiction is consistent with the United States Constitution and laws.

**Final Entry of Default Judgement Against Defendants is Proper**

A court may order a final entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) following the entry of default by the court clerk under Rule 55(a). *See* Fed. R. Civ. P. 55. Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true. *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1126 (C.D. Cal. 2023) (citing *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (internal quotation marks and citations omitted)); *see also Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *Amazon Content Services LLC v. DeBarr*, No. 5:25-CV-00685-JLS-DTB, 2025 WL 2217715, at *2 (C.D. Cal. Aug. 4, 2025); *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 960 (N.D. Cal. 2019).

Plaintiff's Motion for Entry of a Clerk's Default Judgment demonstrates that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendant. Dkt. No. 28.

B. **The Factual Allegations Establish Defendant's Liability.**

1. **Plaintiff has Established Defendant's Racketeering in Violation of 18 U.S.C. § 1964 (Count I).**

The operation of Defendant "1" and John Doe Defendants 1-12, individually and through their alleged business in trading cryptocurrency in their sophisticated global internet cryptocurrency fraud and conversion scheme constitutes a racketeering operation. Defendant "1" directed and coordinated with John Doe Defendants 1-12 ("RICO Enterprise," or "Enterprise") within the meaning of 18 U.S.C. § 1964(4), which Enterprise was engaged in, or the affairs of which affected, interstate and foreign commerce. Dkt. 1 [Complaint] at ¶¶ 38-39.

The RICO Enterprise engaged in the following predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1): Wire fraud in violation of 18 U.S.C. § 1343. The predicate acts include defrauding Plaintiff beginning in September 2023, through domestic and international telephone communication including LinkedIn and Telegram messaging, video calls, domestic and international in-app communication, and e-mails with Plaintiff, ultimately leading to the scamming of the Plaintiff. *Id*. at ¶¶ 43-44.

The RICO Enterprise engaged in a pattern of racketeering activity. These predicate acts are related, in that they have the same or similar purposes, results, participants, and methods of commission, and are otherwise interrelated by distinguishing characteristics and are not isolated events. The related criminal schemes set forth in this Complaint constitutes a "pattern or patterns of racketeering activity" as defined in 18 U.S.C. § 1961(5). *Id.* at ¶¶ 45.

Each person's participation was effective partly because each person mimicked

8

an actual on-join business with a presence in the marketplace: the United Staes and indeed worldwide. As co-conspirators, the unlawful conduct of each member of the RICO Enterprise is attributed to all members, i.e. Defendant "1" and all John Doe Defendants 1-12. *Id.* at ¶50. Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in acquisition of an interest in, or in the establishment or operation of, the RICO Enterprise in violation of 18 U.S.C. § 1962(a). *Id.* at ¶ 48.

Defendants, through this pattern of racketeering activity maintain, directly or indirectly, an interest in or control of the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(b). *Id.* at ¶ 49. Defendant "1" was associated with the RICO Enterprise, and conducted, or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described herein in violation of 18 U.S.C. 2 § 1962(c). *Id.* at ¶ 50.

### 2. Plaintiff has Established Conversion by Defendants (Count II).

Plaintiff is a citizen of California, where he was located when Defendants converted Plaintiff's cryptocurrency. *Id.* at ¶ 9. Therefore, California law applies to the Plaintiff's conversion claim. Under California law, conversion is "the wrongful exercise of dominion over the property of another." Restatement (Second) of Torts § 222A (1965). To claim conversion, a Plaintiff must show that (1) The plaintiff had

ownership or lawful possession at the time of conversion; 2) the Defendant had wrongful dominion or control over the property, and 3) resulting damages. Damages are generally measure by the property's value at the conversion with interest. Cal. Civ. Code § 3336 (West); *See also* <u>Hartford Fin. Corp. v. Burns,</u> 158 Cal. Rptr. 169, 171 (Ct. App. 1979).

After Plaintiff transferred his cryptocurrency assets to the fake exchange, Defendants transferred Plaintiff's cryptocurrency to cryptocurrency addresses owned by Defendant "1" and John Doe Defendants 1-12. Dkt. No. 1 [Complaint] at ¶55. Plaintiff owned and had a right to possess the cryptocurrency. *Id.* at ¶56. Defendants substantially interfered with the cryptocurrency by knowingly or intentionally misappropriating the funds and taking possession of the cryptocurrency, preventing Plaintiff from having access to the cryptocurrency. *Id.* at ¶57. Defendants have refused to return Plaintiff's cryptocurrency after Plaintiff demanded its return on multiple occasions. *Id.* at ¶58.

Defendants did not have Plaintiff's consent to convert Plaintiff's funds to their own use or to the use of others not entitled thereto and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment. Defendant's conduct was a substantial factor in causing Plaintiff harm. *Id.* at ¶¶ 59-60. As a direct and proximate result of Defendants' conversion and conduct, Plaintiff has suffered damages equating the loss of his cryptocurrency, the current market value of which is two million one hundred 18 fifty-two thousand nine hundred five dollars and sixty-

seven cents ($2,152,905.67). *Id.* at ¶ 1.

### 3. Plaintiff has Established Unjust Enrichment by Defendants (Count III).

California law also applies to Plaintiff's Count III claim for Unjust Enrichment. "Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014) (*internal quotations omitted*). A party claiming unjust enrichment generally must show that the defendant received a benefit by fraud, duress, conversion, or similar conduct, and the unjust enrichment of that benefit's retention. *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 315 Cal. Rptr. 3d 373, 386 (Ct. App. 2023); *See Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 239 Cal. Rptr. 3d 908, 915 (Ct. App. 2018). California views claims of unjust enrichment as a claim equivalent to restitution and accepted in cases where an agreement was obtained via fraud. *Id.*; *See also Rutherford Holdings, LLC,* Cal. Rptr. 3d 864. Here, Plaintiff alleges all elements.

Defendants received a direct benefit at Plaintiff's expense by fraudulently convincing Plaintiff to transfer valuable cryptocurrency that Defendants converted from Plaintiff. Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit. Dkt. No. 1 [Complaint] at ¶ 62. The circumstances under which Plaintiff conferred, and Defendants accepted render Defendants' retention of the benefits inequitable. Equity required that Defendants

return to Plaintiff the benefits he conferred upon Defendants. *Id.* at ¶¶ 63-64.

### 4. Plaintiff has Established Imposition of Constructive Trust and Disgorgement of Funds (Count IV).

California law also applies to Plaintiff's Count IV claim requesting the Imposition of a Constructive Trust and Disgorgement of Funds. California law provides that "[o]ne who gains a thing by fraud, accident, mistake, undue influence…or other wrong act detains a thing is… an involuntary trustee thereof, for the benefit of the person who would otherwise have had it." Cal. Civ. Code § 2224 (West); *See Martin v. Kehl*, 145 Cal.App.3d 228 (1983). To impose a constructive trust, three conditions must be satisfied: (1) the existence of a res (property or some interest in property); (2) the plaintiff's right to that res; and (3) the defendant's wrongful acquisition or detention of the res. *Pachulski v. Lanco Real Est.*, 876 F.2d 897 (9th Cir. 1989) (*citing Calistoga Civic Club v. City of Calistoga*, 143 Cal.App.3d 111 (1983)). *See also, Heckmann v. Ahmanson*, 168 Cal.App.3d 119 (1985); *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal.App.4th 1451 (2014). "All that must be shown is that the acquisition of the property was wrongful and that the keeping of property by the defendant would constitute unjust enrichment." *Calistoga Civic Club*, 143 Cal. App.3d at 116, 191.

Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience, Defendants should not be permitted to hold. Dkt. No. 1 [Complaint] at

¶67. The cryptocurrency assets at issue are specific identifiable property and have been traced to Binance, Mexc.com, Fixedfloat, and Kraken ( the "cryptocurrency exchanges"). *Id.* at ¶68.

Any and all assets being held by Defendants at the cryptocurrency exchanges must be held in trust for Plaintiff's benefit; furthermore, Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff. The digital assets identified herein must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff. *Id.* at ¶¶69-70.

### 5. Plaintiff has Established Defendant's Conspiracy (Count V).

Federal and California law applies to Plaintiff's claim for Conspiracy. To prove Conspiracy, a Plaintiff must show: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. California Penal Code § 182(a)(1). *See also People v. Alleyne*, 82 Cal.App.4th 1256 (2000); *Goodwin v. Hill*, No. CV 15-9156 JFW, 2024 WL 967908, at *30 (C.D. Cal. Feb. 2, 2024), report and recommendation adopted, No. CV 15-9156 JFW (PVC), 2024 WL 969453 (C.D. Cal. Mar. 6, 2024) ("conspiracy may be may be proved by indirect evidence and inferences justified by the circumstances."); *Simpson v. Moore,* No. 21-CV-01763-CAB-JLB, 2025 WL 360503,

at *20 (S.D. Cal. Jan. 31, 2025), report and recommendation adopted, No. 21CV1763-CAB-JLB, 2025 WL 841616 (S.D. Cal. Mar. 18, 2025) *(citing People v. Morante* 20 Cal. 4th 403, 416 (1999)); *United States v. Yandell*, No. 2:19-CR-00107-KJM, 2024 WL 4770589, at *6 (E.D. Cal. Nov. 13, 2024) (holding that the elements of conspiracy under California act simply require an overt act, not a specific overt act); *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1287 (C.D. Cal. 2015) (application of conspiracy in a civil context).

The Defendants conspired and confederated with each other to commit, and committed, Conversion (Count II); and Unjust Enrichment (Count III); and RICO violations (Count I). Dkt. No. 1 [Complaint] at ¶ 71.

Relying on the false statements made by Defendant "1", including that he was an expert in cryptocurrency investments, Plaintiff transferred his cryptocurrency assets to fake cryptocurrency platforms which were in actuality deposit addresses owned by John Doe Defendants 1-12. *Id.* at ¶ 72. Defendants conspired with others via the fraudulent website www.coinberryf.com and Telegram where they communicated with Plaintiff. Defendant "1" and John Doe Defendants 1-12 are the owners of the cryptocurrency deposit addresses where Plaintiff's stolen cryptocurrency was transferred. *Id.* at ¶¶ 72. As a result, Plaintiff has suffered damages as a direct and proximate result of Defendants' conspiracy.

C. **Plaintiff's Requested Relief Should be Granted**

    **A. Damages**

Defendants are jointly and severally liable as to the damages against Plaintiff.[4] As set forth in Plaintiff's Complaint, Defendants converted 33.67101 Bitcoin (BTC) from Plaintiff. Dkt. No. 1 [Complaint] at ¶34. At the time of theft, Plaintiff's stolen cryptocurrency was valued at approximately $1,070,962.00.[5] However, the value of these stolen assets has increased and today has a market value of $3,929,755.00.[6] The value of cryptocurrency greatly fluctuates over time. Courts in this state recognize this fact and do take into consideration the fluctuating nature of cryptocurrency values over time, highlighting the importance of restoration of the current value of the specific assets taken rather than relying on the historical dollar value. *People v. Ung*, 88 Cal.App.5th 997 (2023). *Contra Ox Labs, Inc. v. Bitpay, Inc.*, 18-5934-MWF, 2020 WL 1039012 (C.D.C.A. Jan. 24, 2020) (holding that the value of 200 Bitcoins should be based on the market value of the day of injury rather than a later date as Plaintiff failed to establish Defendant was still in possession of Plaintiff's personal property.) Unlike the Plaintiffs in *Ox Labs, Inc.*, Defendants in this case still maintain the stolen assets of Plaintiff.

Therefore, Plaintiff is entitled to damages of $3,929,755.00 plus treble damages pursuant under the Racketeer Influenced and Corrupt Organizations Act (RICO) and the costs of his lawsuit, including reasonable attorneys' fees[7] under Count I (RICO),

---

[4] *See* Cal. Civ. Code §1431.1 (2024) which allows for Plaintiff's recovery of full damages from multiple defendants, regardless of individual fault percentages, via joint and several liability.
[5] *See* Declaration of Plaintiff Hector Gustav Gutierrez attached hereto as Exhibit "1".
[6] *Id.*
[7] *See* 18 U.S. Code § 1964.

Count II (Conversion) and Count III (Unjust Enrichment).[8]

### B. Imposition of a Constructive Trust is Appropriate.

Count III seeks the Imposition of a Constructive Trust and Disgorgement of Funds. Disgorgement of funds is necessary and proper to prevent Defendants' continuing conversion and unjust enrichment, and to afford Plaintiff complete relief. *See Swann v. Charlotte-Mecklenburg Bd. Of Educ.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.")

To impose a constructive trust, three conditions must be satisfied: (1) the existence of a res (property or some interest in property); (2) the plaintiff's right to that res; and (3) the defendant's wrongful acquisition or detention of the res. *Pachulski v. Lanco Real Est.*, 876 F.2d 897 (9th Cir. 1989) (*citing Calistoga Civic Club v. City of Calistoga*, 143 Cal.App.3d 111 (1983)). *See also, Heckmann v. Ahmanson*, 168 Cal.App.3d 119 (1985); *American Master Lease LLC v. Idanta Partners, Ltd.*, 225

---

[8] *See* Fed. R. Civ. P. 55. *See also Ung* 88 Cal.App.5th 997. *Contra Ox Labs, Inc.*, 2020 WL 1039012.

Cal.App.4th 1451 (2014). "All that must be shown is that the acquisition of the property was wrongful and that the keeping of property by the defendant would constitute unjust enrichment." *Calistoga Civic Club*, 143 Cal. App.3d at 191.

Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience, Defendants should not be permitted to hold. Dkt. No. 1 [Complaint] at ¶ 67. The cryptocurrency assets at issue are specific identifiable property and have been traced to cryptocurrency exchanges Binance, Mexc.com, Fixedfloat, and Kraken. *Id.* at ¶ 68. As demonstrated above in Count II (Conversion) and Count III (Unjust Enrichment), Defendants received a direct benefit at Plaintiff's expense by fraudulently convincing Plaintiff to transfer valuable cryptocurrency. Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit to the Plaintiff's continued detriment. *Id.* at ¶ 62. Equity requires that Defendants return to Plaintiff the benefits he conferred upon Defendants.

WHEREFORE, Plaintiff, Hector Gustav Gutierrez, request that default be entered against DEFENDANT "1" a/k/a "Yan Shi Zhang" and JOHN DOES 1-12, as yet unidentified Individuals, Business Entities and/or Unincorporated Associations.

Dated. September 12, 2025.

    Respectfully submitted,

    */s/ Daniel J. Thornburgh*
    Daniel J. Thornburgh, Esq. (*pro hac vice*)
    Fla. Bar No. 0042661

|   |   |
|---|---|
| | **AYLSTOCK, WITKIN,** |
| | **KREIS & OVERHOLTZ, PLLC** |
| | 17 East Main Street, Suite 200 |
| | Pensacola, FL 32502 |
| | Telephone: 850-202-1010 |
| | Fax: 850-916-7449 |
| | dthornburgh@awkolaw.com |
| -and- | |
| | Kiley L. Grombacher |
| | Bradley Grombacher, LLP |
| | 31365 Oak Crest Drive, Suite 240 |
| | Westlake Village, CA  91361 |
| | Kgrombacher@bradleygrombacher.com |
| | Telephone:  805-270-7100 |
| | Facsimile:  805-270-7589 |

*Counsel for Plaintiff, Hector Gustav Gutierrez*

## CERTIFICATE OF SERVICE

I, Daniel J. Thornburgh, hereby certify that the foregoing document, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 12, 2025. Moreover, Plaintiff will publish this motion and any order on Plaintiff's Service Website at https://usdccourtservice.com/cv-01923/.

Respectfully submitted,

By: /s/ Daniel J. Thornburgh
Daniel J. Thornburgh, Esq.
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 850-916-7449
dthornburgh@awkolaw.com