KILEY L. GROMBACHER
BRADLEY GROMBACKER, LLP
31365 OAK CREST DRIVE, SUITE 240
WESTLAKE VILLAGE CA 91361
KROMBACHER@BRADLEYGROMBACHER.COM
TELEPHONE:805-270-7100
FACSIMILE: 805-270-7589

DANIEL J. THORNBURGH (*PRO HAC VICE*)
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
DTHORNBURGH@AWKOLAW.COM
TELEPHONE: 850-202-1010
FAX: 850-916-7449

*Counsel for Plaintiff, Hector Gustav Gutierrez*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR GUSTAV GUTIERREZ,<br><br>Plaintiff,<br><br>v.<br><br>DEFENDANT "1" A/K/A "YAN SHI ZHANG", AND JOHN DOE DEFENDANTS 1-12 WHO ARE COHORTS OF DEFENDANT "1" AND ARE THE OWNERS OF THE FOLLOWING CRYPTOCURRENCY DEPOSIT WALLETS WHERE PLAINTIFF'S STOLEN CRYPTOCURRENCY ASSETS WERE TRANSFERRED:<br><br>Binance: 1DapM8cHxTE35z9AyXXkhRVXtMucJyvWia, | Case No. 5:24-cv-01923-KK-SHK<br><br>**PLAINTIFF'S AMENDED MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**<br><br>**Date: December 11, 2025**<br><br>**Time: 9:30 a.m.**<br><br>**Judge: Hon. Kenly Kiya Kato**<br><br>**Courtroom:  3, 3rd Floor** |

1

1DDWbqzoejJKcR5cAErPJXo6qur19EdLm8,
17A5UKMuPL3obTpCuMWXPsRp2uFBcBXtkc,
17hE2Tj8CgcNyagaXijqhJPdb5J36AaQjY,
17mEq1YoHcpay6QfbwtD9A8FwwZSurPgqZ,
1LzN8oCuyw76EvrVV3PbE87YGczUzc68Lm,
1LxktcfvQNMsPirzXqFisHK8MA8WhFNp5m,
14oAdLU6i9keMAFkCZcvhhxVA9aCLM83Jc,
152SHiNJu9F3KvomaX4GtcffNHjqgnNfoF,
17Dk4kwTdpnbc9tAHuj8MMKraJFpbsQnVK,
1KPJfuxFii5PjMRZy94TEBrhGpqtjWmCG1

Mexc.com:
3DDQ5pgZxm3z5oNRSBLwZDp34MLXWtGK89

Defendants.

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, and this Court's Order denying Plaintiff's Motion for Default Judgment (Dkt. No. 37),  Plaintiff, Hector Gustav Gutierrez, hereby amends their Motion for Default Judgment and requests that the Court enter a final order of default in this matter against DEFENDANT "1" a/k/a "Yan Shi Zhang" and JOHN DOES 1-12, as yet unidentified Individuals, Business Entities and/or Unincorporated Associations (collectively "Defendants") who have failed to appear or otherwise respond to the Complaint within the prescribed period of time allowed under the Federal Rules of Civil Procedure.  In support thereof, and in accordance with Rule 55(a), Plaintiff states as follows:

## **FACTUAL BACKGROUND**

Defendants stole cryptocurrency from Plaintiff in the amount of 33.67101

Bitcoin (BTC) through a sophisticated global internet cryptocurrency fraud and conversion scheme, the current market value of which is three million six hundred ninety-eight thousand six hundred twenty-four dollars ($3,698,624.00)[1]. Defendant "1", a/k/a "Yan Shi Zhang", played a material role in the theft of Plaintiff's assets, and he and his cohorts currently possess all or a significant portion of Plaintiff's stolen property.

Plaintiff is a victim of not only a nationwide but also a worldwide RICO conspiracy known as "pig butchering." Pig butchering scams are "fraudulent crypto investment schemes directed from Asia," which are now a billion-dollar industry. Pig butchering scams, run and perpetrated by organized criminal groups in Southeast Asia, are called such because the victims are "likened to hogs fattened up for slaughter." The scammers, typically located in Southeast Asia, carefully research their victims, and can spend months grooming the victim to gain their trust. Pig butchering scammers utilize expertly crafted copycat websites that replicate authentic trading platforms. These scammers simulate trades and returns all while the victims are unaware of the scheme.

Defendant "1" directed Plaintiff to sign up for Kraken, purchase Bitcoin (BTC), then transfer his Bitcoin (BTC) from Kraken to www.coinberryf.com, which was a copycat website of the legitimate exchange Coinberry. However, the fraudulent

---

[1] Current market value calculated using data from blockchain.com on November 2, 2025.

exchange that Defendant "1" directed Plaintiff to transfer his Bitcoin to (Coinberryf) was not a legitimate platform but was instead a fraudulent website created to deceive individuals, including Plaintiff, into believing they were investing on a legitimate cryptocurrency exchange.

Plaintiff's Bitcoin (BTC) on the www.coinberryf.com website was then converted to Tether (USDT) for use in various crypto investment strategies. To further entice Plaintiff into believing he was a legitimate investor on or about November 30, 2023, Defendant "1" had Plaintiff run a test where he transferred approximately five thousand dollars ($5,000.00) worth of cryptocurrency from his Coinberry account to Kraken. When the transfer was successful, Plaintiff believed that Defendant "1" was a legitimate investor who wanted to help him learn how to invest cryptocurrency and that the fraudulent website he had used was also legitimate.

Defendants posted fraudulent returns on their fake website, which made it appear that Plaintiff was making money on his trades. As a result, Plaintiff continued to transfer cryptocurrency from his Kraken account to the fraudulent exchange. Plaintiff, believing he made substantial returns on his investments, attempted to withdraw his funds from www.coinberryf.com. However, after multiple unsuccessful attempts to withdraw his funds, Plaintiff realized he had been scammed.

## **PROCEDURAL BACKGROUND**

On September 10, 2024, Plaintiff filed their Complaint for Racketeering in

violation of 18 U.S.C. § 1964.[2]

On July 3, 2025, Defendants were served with Summons and Complaint via Telegram, Non-Fungible Tokens (NFTs) and via website posting pursuant to the Court's June 30, 2025, Order Granting Motion for Alternative Service of Process on Foreign Defendants under Federal Rule of Civil Procedure 4(f)(3).[3] The time allowed for Defendants to respond to the Complaint has expired. Defendants had failed to appear or otherwise file a responsive pleading.

Accordingly, Plaintiff's filed their request for Clerk's Default on August 06, 2025 (Dkt. No. 28). The Clerk, however, filed a Notice of Deficiency Default Judgment noting that the Clerk is not authorized to determine the propriety of service of process in a foreign jurisdiction; consequently, the Clerk forwarded Plaintiff's request to this Court. (Dkt. No. 31).

Upon review of Plaintiff's request for Default Judgment, this Court granted Plaintiff's Motion for Default Judgment on August 29. 2025. (Dkt. No. 33).

Plaintiff submitted a Final Motion for Default Judgment on September 12, 2025. (Dkt. No. 35).

On October 17, 2025, this Court denied Plaintiff's Motion for Final Default Judgment without prejudice as procedurally defective, allowing Plaintiff to file an

---

[2] ECF No. 1 [Complaint]

[3] See Dkt. 26-1: Exhibit "1" [Thornburgh Declaration.] at ¶¶ 3-5; ECF No. 25 [Order Granting Alternate Service of Process on Foreign Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3)] at ¶¶ 5

amended motion for default judgment.

Plaintiffs are informed that Defendants are not infants or incompetent. people. Fed. R. Civ. P. 55(b)(2). [4]

Plaintiffs are also informed and believe that the Service members Civil Relief Act does not apply. [5]

## **RULE OF LAW**

Pursuant to Federal Rule of Civil Procedure 55(a), "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Such an entry may be made by the Clerk of the Court when the plaintiff's claim is for a sum certain (Rule 55(b)(1)) or by application to the court for default judgment (Rule 55(b)(2)).

Upon the entry of default, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true. *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1126 (C.D. Cal. 2023) (citing *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (internal quotation marks and citations omitted)); *see also Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment

---

[4] *See* Exh. "2": Affidavit Pursuant to L.R. 55.1
[5] *Id.*

itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *Amazon Content Services LLC v. DeBarr*, No. 5:25-CV-00685-JLS-DTB, 2025 WL 2217715, at *2 (C.D. Cal. Aug. 4, 2025); *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 960 (N.D. Cal. 2019).

Plaintiff's Motion for Entry of a Clerk's Default Judgment, and this Court's acceptance, demonstrates that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendant.

## ANALYSIS

### A. Jurisdiction in this Court is Proper

### 1. This Court has Personal Jurisdiction over Defendants

Personal jurisdiction over Defendants and venue in this district are proper under Federal Rule of Civil Procedure 4(k)(2), 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c). Even without knowing the exact identities of John Doe Defendants 1-15, this Court can still establish personal jurisdiction over Doe Defendants based on the facts outlined below.

"If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum, if the defendant has purposefully availed himself or herself of forum benefits, and the controversy is related to or arises out of a defendant's contacts with the forum." *Jewish Def. Org., Inc. v. Superior Ct.*, 72 Cal. App. 4th 1045, (1999) (Internal Quotations Omitted) (Citing *Vons Companies, Inc. v.*

*Seabest Foods, Inc., supra,* 926 P.2d 1085 (Cal. 1996)); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8, & 9*, 172 F.R.D. 411, 414 (D. Haw. 1996) (acknowledging there is a Circuit split in the Ninth Circuit establishing personal jurisdiction over Doe Defendants but ultimately holding that "this Court believes that [raising jurisdictional questions for "Doe Defendants" only when actual parties are substituted] to be the best resolution of the various federalist and separation of power concerns implicated."); *Lindley v. General Elec. Co.,* 780 F.2d 797 (9th Cir.1986), *cert. denied* 476 U.S. 1186 (1986); *Ortiz v. City of Imperial,* 884 F.2d 1312, 1314 (9th Cir.1989) (following *Lindley); Cabrales v. Los Angeles,* 864 F.2d 1454, 1462–64 (9th Cir.1988), *vacated by* 490 U.S. 1087 (1989), *reinstated by* 886 F.2d 235 (9th Cir.1989), *cert. denied* 494 U.S. 1091 (1990). *C.f. e.g., Garter–Bare Co. v. Munsingwear, Inc.,* 650 F.2d 975, 981 (9th Cir.1980); *Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187 (9th Cir.1970); *Molnar v. National Broadcasting Co.*, 231 F.2d 684 (9th Cir.1956).

Specific jurisdiction is determined under a three-part test:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction

must be reasonable. *Panavision Intern., L.P. v. Toeppen* 141 F.3d 1316, 1320 (9th Cir.1998) (applying California law).

In the present case, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (1) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (2) exercising jurisdiction is consistent with the United States Constitution and laws. Defendant "1" represented to Plaintiff that his name was "Yan Shi Zhang." Defendant represented to Plaintiff that he was originally from Singapore but was currently living in New York City. The parties' communications consistently demonstrated Defendant "1" was from Singapore and a Citizen of New York. Additionally, John Doe Defendants 1-15 have not only intentionally concealed their identity as part of their scheme to defraud Plaintiff, but as part of their conspiracy, have also directed fraudulent communications towards Plaintiff in California, causing Plaintiff to suffer significant economic and emotional harm while in California.

Defendants are also subject to general personal jurisdiction in this district as Defendants transacted their affairs in this district insomuch as: Defendants directed business activities towards the Plaintiff and the State of California; conducted business with consumers within the State of California, including Plaintiff; and consistently communicated with Plaintiff, and others throughout the United States, including in this District.

Defendants directed business activities toward and conducted business with

9

consumers throughout the United States, including Plaintiff through at least a fraudulent website (www.coinberryf.com). This fraudulent website was accessed by the Plaintiff on the internet and on smartphones accessible from California. Dkt. No. 1 at ¶ 6.[6] Plaintiff made all transactions as instructed by Defendant "1" while in the State of California. In total, Plaintiff made over 44 transactions over the course of three months, all within the State of California.[7]

Additionally, Defendant "1" communicated with Plaintiff frequently and consistently while Plaintiff was located in the State of California. Defendant "1" maintained daily communications over three months with Plaintiff while Plaintiff was located in California. Defendant "1" gave Plaintiff explicit instructions on opening a www.coinberryf.com account, transacting on that account, and showing fraudulent "returns" from that account.[8]

---

[6] Personal jurisdiction has been found where IP addresses and other internet activities were located in the forum state. However, the presence of IP addresses, though not dispositive, is relevant. *See, e.g.,* HB Productions, Inc. v. Faizan, 603 F.Supp.3d 910 (D. Haw. 2022)*;* Tech Heads, Inc. v. Desktop Service Center, Inc., 105 F.Supp.2d 1142 (D. Or. 2000) (holding that the quality of contacts, rather than quantity is critical in determining purposeful availment); *Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074 (C.D.C.A. 1999) (holding that personal jurisdiction was established over a defendant whose website allowed customers to purchase products online, including sales to residents of the forum state); Hall v. LaRonde, 56 Cal.App.4th 1342 (Cal. Ct. App. 1997) (holding electronic mail and telephone by a party in another state could establish sufficient minimum contacts with California to support personal jurisdiction). *Cf, e.g.* X Corp. v. Center for Countering Digital Hate Ltd., 724 F.Supp.3d 921 (N.D.C.A. 2024)( holding that "express aiming" and the mere location of servers is insufficient to establish personal jurisdiction); *Pavlovich v. Superior Court*, 29 Cal.4th 262 (Cal. 2002) (establishing jurisdiction on the grounds of an interactive websites that allow users to exchange information with the host computer depends on the level of interactivity and commercial nature of the exchange); *Jewish Defense Org. Inc. v. Superior Ct.*, 72 Cal.App.4th 1045 (Cal. Ct. App. 1999).

[7] *See* Exh. "6": Gutierrez, Hector Gustav –2024-01-15- Kraken Tx; Exh. "7": Gutierrez, Hector Gustav- 2024-01-15- Screenshots of Txs.

[8] *See* Exh. "1": Declaration of Hector Gustav Gutierrez; Exh. "4": Gutierrez, Hector Gustav – 2024-01-15- Messages.

Moreover, the fraudulent website has at least one associated IP address that was traced to California. At the time of tracing, the IP addresses for www.coinberryf.com were 104.21.74.26 and 172.67.153.112 both of which were tracked to San Francisco, California. At the time of filing, Plaintiff tracked the following IP addresses for www.coinberryf.com to Hong Kong: 27.124.41.156, 14.128.34.154, 14.128.34.153, and 27.124.41.170. At the time of filing, Plaintiff tracked the following IP addresses for www.coinberryf.com to Phnom Penh, Cambodia: 27.124.34.228, 27.124.34.224. Dkt. No. 1 at ¶ 8.[9]

Ultimately, the theft occurred while Plaintiff was located in the State of California. Defendants directed numerous false and fraudulent representations to Plaintiff in this district, stole Plaintiff's assets within this district, and caused significant harm to Plaintiff in this district. Dkt. No. 1 at ¶ 7.

## 2. This Court has Diversity and Federal Question Subject Matter Jurisdiction.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as Plaintiff here has no common state citizenship with

---

[9] *See, e.g., HB Productions, Inc.*, 603 F.Supp.3d 910; *Stomp, Inc.*, 61 F.Supp.2d 1074 (C.D.C.A. 1999) (holding that personal jurisdiction was established over a defendant whose website allowed customers to purchase products online, including sales to residents of the forum state). *Cf, e.g. Pavlovich*, 29 Cal.4th 262 (establishing jurisdiction on the grounds of an interactive websites that allow users to exchange information with the host computer depends on the level of interactivity and commercial nature of the exchange); *Jewish Defense Org. Inc.*, 72 Cal.App.4th 1045.

any Defendants. Additionally, the amount in controversy here exceeds $75,000.

Furthermore, this Court has further subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. This action includes damages pursuant to 18 U.S.C. §1964, the Racketeer Influenced and Corrupt Organizations Act ("RICO").

B. **The Factual Allegations Establish Defendant's Liability.**

1.  **Plaintiff has Established Defendants' Racketeering in Violation of 18 U.S.C. § 1964 (Count I).**

The operation of Defendant "1" and John Doe Defendants 1-12, individually and through their alleged business in trading cryptocurrency in their sophisticated global internet cryptocurrency fraud and conversion scheme, constitutes a racketeering operation. Defendant "1" directed and coordinated with John Doe Defendants 1-12 ("RICO Enterprise," or "Enterprise") within the meaning of 18 U.S.C. § 1964(4). This Enterprise was engaged in, or the affairs thereof affected, interstate and foreign commerce. Dkt. 1 [Complaint] at ¶¶ 38-39.

The RICO Enterprise engaged in the following predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1): Wire fraud in violation of 18 U.S.C. § 1343.[10] The predicate acts include defrauding Plaintiff beginning in September 2023, through domestic and international telephone communication including LinkedIn and Telegram messaging, video calls, domestic and international in-app communication,

and e-mails with Plaintiff, ultimately leading to the scamming of the Plaintiff. *Id.* at ¶¶ 43-44.

The related criminal schemes set forth in this Complaint constitutes a "pattern or patterns of racketeering activity" as defined in 18 U.S.C. § 1961(5). The RICO Enterprise, consisting of Defendant "1" and all Doe Defendants, engaged in a pattern of racketeering activity.[11] *Id.* at ¶¶ 45. These predicate acts are related, in that they have the same or similar purposes, results, participants, and methods of commission, and are otherwise interrelated by distinguishing characteristics and are not isolated events.[12]

Here, Plaintiff made all transactions as instructed by Defendant "1". John Doe

---

[11] The "pattern of racketeering activity" requires both a relationship and continuity between the predicate acts. "A pattern of racketeering activity…exists when defendants engage in multiple predicates within a single scheme that [are] related and that amount [] to, or threaten [] the likelihood of, continued criminal activity." *Carey v. J.A.K.'s Puppies, Inc.*, 763 F. Supp. 3d 952, 989 (C.D. Cal. 2025) (citing *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989))(internal quotations omitted) Continuity may be shown if the predicate acts are part of an ongoing entity's regular way of conducting business, or if the acts themselves include a specific threat of repetition extending into the future. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989). *See also McGowan v. Weinstein*, 562 F. Supp. 3d 744, 751 (C.D. Cal. 2021); *Buran Equip. Co., Inc. v. Hydro Elec. Constructors, Inc.*, 656 F. Supp. 864, 866 (N.D. Cal. 1987). *Contra Medallion Television Enter. Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987) (finding no closed-ended pattern of racketeering activity in a single alleged scheme with single victim, even though scheme involved several fraudulent acts).

[12] Under an open-ended approach to a pattern of racketeering activity, "proof of a singly scheme can be sufficient." McGowan, 562 F. Supp. 3d 744, 752 (citing *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)); however, the circumstances of the case must suggest that the predicate acts are indicative of a threat of continuing activity. *Id.*; *see also  US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 319 (4th Cir. 2010); *Steinberg Moorad & Dunn Inc. v. Dunn*, 136 F. App'x 6, 11 (9th Cir. 2005) (finding no open-ended continuity where threat of racketeering would necessarily end when underlying litigation ended); *Medallion Television Enters., Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1362 (9th Cir. 1987); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (drawing distinction between "a single episode" of racketeering with a "singular purpose" and "a series of separate, related acts" of racketeering).

Defendants 1-12 all coordinated with Defendant 1, benefiting from the various fraudulent transactions Plaintiff was instructed to transact.

Additionally, Defendant "1" communicated with Plaintiff frequently and consistently. Defendant "1" maintained months of daily communication with Plaintiff. Defendant "1" gave Plaintiff explicit instructions on opening a www.coinberryf.com account. Defendant "1" daily gave Plaintiff instructions on transacting cryptocurrency on this fraudulent Coinberryf account, including when to trade, what to trade, and how to perform the trade. Defendant "1" regularly communicated to Plaintiff the fraudulent returns of that account.[13] Defendants directed numerous false and fraudulent representations to Plaintiff in this district consistently and repeatedly throughout the course of this scam. Dkt. No. 1 at ¶ 7.

Each person's participation was effective partly because each person mimicked an actual on-join business with a presence in the marketplace: the United States and indeed worldwide. As co-conspirators, the unlawful conduct of each member of the RICO Enterprise is attributed to all members, i.e. Defendant "1" and all John Doe Defendants 1-12. *Id.* at ¶50. Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity; and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in acquisition of an

---

[13] *See* Exh. "1": Declaration of Hector Gustav Gutierrez; Exh. "4": Gutierrez, Hector Gustav – 2024-01-15-Messages.

interest in, or in the establishment or operation of, the RICO Enterprise in violation of 18 U.S.C. § 1962(a). *Id.* at ¶ 48.

Defendants, through this pattern of racketeering activity maintain, directly or indirectly, an interest in or control of the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(b). *Id.* at ¶ 49. Defendant "1" was associated with the RICO Enterprise, and conducted, or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described herein in violation of 18 U.S.C. 2 § 1962(c). *Id.* at ¶ 50.

### 2.  Plaintiff has Established Conversion by Defendants (Count II).

Plaintiff is a citizen of California, where he was located when Defendants converted Plaintiff's cryptocurrency. *Id.* at ¶ 9. Therefore, California law applies to the Plaintiff's conversion claim.

Under California law, conversion is "the wrongful exercise of dominion over the property of another." Restatement (Second) of Torts § 222A (1965). To claim conversion, a Plaintiff must show that (1) The plaintiff had ownership or lawful possession at the time of conversion; 2) the Defendant had wrongful dominion or control over the property, and 3) resulting damages. Damages are generally measured by the property's value at the conversion with interest. Cal. Civ. Code § 3336 (West); *See also Hartford Fin. Corp. v. Burns,* 158 Cal. Rptr. 169, 171 (Ct. App. 1979).

After Plaintiff transferred his cryptocurrency assets to the fake exchange,

Defendants transferred Plaintiff's cryptocurrency to cryptocurrency addresses owned by Defendant "1" and John Doe Defendants 1-12. Dkt. No. 1 [Complaint] at ¶55. Plaintiff owned and had a right to possess cryptocurrency. *Id.* at ¶56.  Defendants substantially interfered with Plaintiff's cryptocurrency by knowingly or intentionally misappropriating the funds and taking possession of the cryptocurrency, preventing Plaintiff from having access to the cryptocurrency. *Id.* at ¶57. Defendants have refused to return Plaintiff's cryptocurrency after Plaintiff demanded its return on multiple occasions. *Id.* at ¶58.[14]

Defendants did not have Plaintiff's consent to convert Plaintiff's funds to their own use or to the use of others not entitled thereto; and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment. Defendant's conduct was a substantial factor in causing Plaintiff harm. *Id.* at ¶¶ 59-60. As a direct and proximate result of Defendants' conversion and conduct, Plaintiff has suffered damages equating the loss of his cryptocurrency, the current market value of which is three million six hundred ninety-eight thousand six hundred twenty-four dollars ($3,698,624.00.)[15]

### 3.  Plaintiff has Established Unjust Enrichment by Defendants (Count III).

California law also applies to Plaintiff's Count III claim for Unjust Enrichment.

---

[14] *See also* Exh. "1": Declaration of Hector Gustav Gutierrez
[15] Current market value calculated using data from blockchain.com on November 2, 2025.

"Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014) (*internal quotations omitted*). A party claiming unjust enrichment generally must show that the defendant received a benefit by fraud, duress, conversion, or similar conduct, and the unjust enrichment of that benefit's retention. *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 315 Cal. Rptr. 3d 373, 386 (Ct. App. 2023); *See Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 239 Cal. Rptr. 3d 908, 915 (Ct. App. 2018). California views claims of unjust enrichment as a claim equivalent to restitution and accepted in cases where an agreement was obtained via fraud. *Id.*; *See also Rutherford Holdings, LLC,* Cal. Rptr. 3d 864.  Here, Plaintiff alleges all elements.

Defendants received a direct benefit at Plaintiff's expense by fraudulently convincing Plaintiff to transfer valuable cryptocurrency that Defendants converted from Plaintiff. Defendants have knowledge of the benefit Plaintiff conferred on them and have retained such benefit. Dkt. No. 1 [Complaint] at ¶ 62. The circumstances under which Plaintiff conferred, and Defendants accepted, render Defendants' retention of the benefits inequitable.  Equity required that Defendants return to Plaintiff the benefits he conferred upon Defendants. *Id.* at ¶¶ 63-64.

### 4.  Plaintiff has Established Imposition of Constructive Trust and Disgorgement of Funds (Count IV).

California law also applies to Plaintiff's Count IV claim requesting the

Imposition of a Constructive Trust and Disgorgement of Funds. California law provides that "[o]ne who gains a thing by fraud, accident, mistake, undue influence…or other wrong act detains a thing is… an involuntary trustee thereof, for the benefit of the person who would otherwise have had it." Cal. Civ. Code § 2224 (West); *See Martin v. Kehl*, 145 Cal.App.3d 228 (1983). To impose a constructive trust, three conditions must be satisfied: (1) the existence of a res (property or some interest in property); (2) the plaintiff's right to that res; and (3) the defendant's wrongful acquisition or detention of the res. *Pachulski v. Lanco Real Est.*, 876 F.2d 897 (9th Cir. 1989) (*citing Calistoga Civic Club v. City of Calistoga*, 143 Cal.App.3d 111 (1983)). *See also, Heckmann v. Ahmanson*, 168 Cal.App.3d 119 (1985); *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal.App.4th 1451 (2014). "All that must be shown is that the acquisition of the property was wrongful and that the keeping of property by the defendant would constitute unjust enrichment." *Calistoga Civic Club*, 143 Cal. App.3d at 116, 191.

Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience, Defendants should not be permitted to hold. Dkt. No. 1 [Complaint] at ¶67. The cryptocurrency assets at issue are specific identifiable property and have been traced to Binance, Mexc.com, Fixedfloat, and Kraken (the "cryptocurrency exchanges"). *Id.* at ¶68.

Any and all assets being held by Defendants at the cryptocurrency exchanges

must be held in trust for Plaintiff's benefit; furthermore, Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff. The digital assets identified herein must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff. *Id.* at ¶¶69-70.

## 5. Plaintiff has Established Defendant's Conspiracy (Count V).

Federal and California law applies to Plaintiff's claim for Conspiracy. To prove Conspiracy, a Plaintiff must show: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. California Penal Code § 182(a)(1). *See also People v. Alleyne*, 82 Cal.App.4th 1256 (2000); *Goodwin v. Hill*, No. CV 15-9156 JFW, 2024 WL 967908, at *30 (C.D. Cal. Feb. 2, 2024), report and recommendation adopted, No. CV 15-9156 JFW (PVC), 2024 WL 969453 (C.D. Cal. Mar. 6, 2024) ("conspiracy may be may be proved by indirect evidence and inferences justified by the circumstances."); *Simpson v. Moore*, No. 21-CV-01763-CAB-JLB, 2025 WL 360503, at *20 (S.D. Cal. Jan. 31, 2025), report and recommendation adopted, No. 21CV1763-CAB-JLB, 2025 WL 841616 (S.D. Cal. Mar. 18, 2025) *(citing People v. Morante* 20 Cal. 4th 403, 416 (1999)); *United States v. Yandell*, No. 2:19-CR-00107-KJM, 2024 WL 4770589, at *6 (E.D. Cal. Nov. 13, 2024) (holding that the elements of

conspiracy under California act simply require an overt act, not a specific overt act); *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1287 (C.D. Cal. 2015) (application of conspiracy in a civil context).

The Defendants conspired and confederated with each other to commit, and committed, Conversion (Count II); and Unjust Enrichment (Count III); and RICO violations (Count I). Dkt. No. 1 [Complaint] at ¶ 71.

Relying on the false statements made by Defendant "1", including that he was an expert in cryptocurrency investments, Plaintiff transferred his cryptocurrency assets to fake cryptocurrency platforms which were, in actuality, deposit addresses owned by John Doe Defendants 1-12. *Id.* at ¶ 72. Defendants conspired with others via the fraudulent website www.coinberryf.com, and through Telegram, where they communicated with Plaintiff. Defendant "1" and John Doe Defendants 1-12 are the owners of the cryptocurrency deposit addresses where Plaintiff's stolen cryptocurrency was transferred. *Id.* at ¶ ¶ 72. As a result, Plaintiff has suffered damages as a direct and proximate result of Defendants' conspiracy.

## C. **Plaintiff's Requested Relief Should be Granted**

### A. Damages

Defendants are jointly and severally liable as to the damages against Plaintiff.[16] As set forth in Plaintiff's Complaint, Defendants converted 33.67101 Bitcoin (BTC)

---

[16] *See* Cal. Civ. Code §1431.1 (2024) which allows for Plaintiff's recovery of full damages from multiple defendants, regardless of individual fault percentages, via joint and several liability.

from Plaintiff. Dkt. No. 1 [Complaint] at ¶34. At the time of theft, Plaintiff's stolen cryptocurrency was valued at approximately $1,070,962.00.[17] However, the value of these stolen assets has increased and today it has a market value of $3,698,624.00.[18]

The value of cryptocurrency greatly fluctuates over time. Courts in this state recognize this fact and do take into consideration the fluctuating nature of cryptocurrency values over time, highlighting the importance of restoration of the current value of the specific assets taken rather than relying on the historical dollar value. *People v. Ung*, 88 Cal.App.5th 997 (2023). *Contra Ox Labs, Inc. v. Bitpay, Inc.*, 18-5934-MWF, 2020 WL 1039012 (C.D.C.A. Jan. 24, 2020) (holding that the value of 200 Bitcoins should be based on the market value of the day of injury rather than a later date as Plaintiff failed to establish Defendant was still in possession of Plaintiff's personal property.) Unlike the Plaintiffs in *Ox Labs, Inc.*, Defendants in this case still maintain the stolen assets of Plaintiff.

Therefore, Plaintiff is entitled to damages of $3,698,624.00 plus treble damages pursuant under the Racketeer Influenced and Corrupt Organizations Act (RICO) and the costs of his lawsuit, including reasonable attorneys' fees[19] under Count I (RICO), Count II (Conversion) and Count III (Unjust Enrichment).[20]

### B. Imposition of a Constructive Trust is Appropriate.

---

[17] *See* Declaration of Plaintiff Hector Gustav Gutierrez attached hereto as Exhibit "1".
[18] Current market value calculated using data from blockchain.com on November 2, 2025.
[19] *See* 18 U.S. Code § 1964.
[20] *See* Fed. R. Civ. P. 55. *See also Ung* 88 Cal.App.5th 997. *Contra Ox Labs, Inc.*, 2020 WL 1039012.

Count III seeks the Imposition of a Constructive Trust and Disgorgement of Funds. Disgorgement of funds is necessary and proper to prevent Defendants' continuing conversion and unjust enrichment, and to afford Plaintiff complete relief. *See Swann v. Charlotte-Mecklenburg Bd. Of Educ.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.")

To impose a constructive trust, three conditions must be satisfied: (1) the existence of a res (property or some interest in property); (2) the plaintiff's right to that res; and (3) the defendant's wrongful acquisition or detention of the res. *Pachulski v. Lanco Real Est.*, 876 F.2d 897 (9th Cir. 1989) (*citing Calistoga Civic Club v. City of Calistoga*, 143 Cal.App.3d 111 (1983)). *See also, Heckmann v. Ahmanson*, 168 Cal.App.3d 119 (1985); *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal.App.4th 1451 (2014). "All that must be shown is that the acquisition of the property was wrongful and that the keeping of property by the defendant would constitute unjust enrichment." *Calistoga Civic Club*, 143 Cal. App.3d at 191.

Defendants – through actual fraud, misappropriation, conversion, theft, or other

questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience, Defendants should not be permitted to hold. Dkt. No. 1 [Complaint] at ¶ 67. The cryptocurrency assets at issue are specific identifiable property and have been traced to cryptocurrency exchanges Binance, Mexc.com, Fixedfloat, and Kraken. *Id.* at ¶ 68. As demonstrated above in Count II (Conversion) and Count III (Unjust Enrichment), Defendants received a direct benefit at Plaintiff's expense by fraudulently convincing Plaintiff to transfer valuable cryptocurrency. Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit to the Plaintiff's continued detriment. *Id.* at ¶ 62. Equity requires that Defendants return to Plaintiff the benefits he conferred upon Defendants.

WHEREFORE, Plaintiff, Hector Gustav Gutierrez, request that default be entered against DEFENDANT "1" a/k/a "Yan Shi Zhang" and JOHN DOES 1-12, as yet unidentified Individuals, Business Entities and/or Unincorporated Associations.

Dated. November 7, 2025.

Respectfully submitted,

*/s/ Daniel J. Thornburgh*
Daniel J. Thornburgh, Esq. (*pro hac vice*)
Fla. Bar No. 0042661
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Fax: 850-916-7449
dthornburgh@awkolaw.com

1

-and-

2

3

Kiley L. Grombacher
Bradley Grombacher, LLP
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Kgrombacher@bradleygrombacher.com
Telephone: 805-270-7100
Facsimile: 805-270-7589

4

5

6

7

8

*Counsel for Plaintiff, Hector Gustav Gutierrez*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Daniel J. Thornburgh, hereby certify that the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 7, 2025. Moreover, Plaintiff will publish this motion and any order on Plaintiff's Service Website at https://usdccourtservice.com/cv-01923/.

Respectfully submitted,

By: /s/ Daniel J. Thornburgh
    Daniel J. Thornburgh, Esq.
    **AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
    17 East Main Street, Suite 200
    Pensacola, FL 32502
    Telephone: 850-202-1010
    Fax: 850-916-7449
    dthornburgh@awkolaw.com